UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| LAURA WATSON | CIVIL ACTION NO. 16-0235 |
| VERSUS | JUDGE ELIZABETH FOOTE |
| OLIN CORPORATION | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM ORDER

Before the Court is Defendant Olin Corporation's Motion To Dismiss [Record Document 7]. Plaintiff filed a complaint against Olin Corporation alleging that she suffered injuries while she was employed by Olin as a result of Olin's negligence. Record Document 1. Defendant moved to dismiss Plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, or alternatively, for a more definite statement under Rule 12(e). Record Document 7.

For the reasons discussed below, Defendant's motion to dismiss is **DENIED** and the motion for a more definite statement is **GRANTED IN PART** with respect to Plaintiff's alleged injuries and **DENIED IN PART** with respect to the chemicals to which Plaintiff was allegedly exposed. Plaintiff is **ORDERED** to file a more definite statement of her injuries within 14 days of the date of this order. If Plaintiff does not timely file a more definite statement, the Clerk of Court is directed to strike Plaintiff's Second Amended Complaint in accordance with Rule 12(e).

## I. Background

Plaintiff Laura Watson worked for Olin Mathieson Chemical Corporation at its

chemical plant in Lake Charles, Louisiana, from 1948 to 1950, as an "office worker/typist in the traffic department building." Record Document 14, p. 2. Plaintiff alleges that during this time, she was exposed to ammonia, sodium hydroxide, "and/or possibly other unreasonably dangerous materials and irritants," which caused various injuries, "including but not limited to chemical burns in her lungs, difficulty breathing and substantially decreased lung capacity," requiring Plaintiff "to be placed on oxygen and essentially confined to her home." Id., pp. 2-3. She alleges a single cause of action for failure to provide a safe place to work. Id., p. 5.

Olin Corporation, successor in interest to Olin Mathieson Chemical Corporation, moved to dismiss Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim, or alternatively for a more definite statement of Plaintiff's allegations under Rule 12(e). Record Document 7. After this motion was filed, Plaintiff filed her second amended complaint, changing some of her allegations. Record Document 14. In her original complaint, Plaintiff alleged that, in addition to her work from 1948-1950, she also worked for Olin from 1952-1955. Record Document 1, p. 2. In her second amended complaint, Plaintiff withdraws her claims relating to this later time period, explaining that she was "mistaken" and actually worked for Olin at a hospital in Arkansas during that later time frame. Record Document 14; Record Document 15, pp. 2-3. The Court treats the motion to dismiss as directed at the second amended complaint, because the original complaint has been superseded. See 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed.) ("Once an amended pleading is

interposed, the original pleading no longer performs any function in the case.").

## II. Discussion

Plaintiff's claim is a tort claim. Defendant argues that the claim must be dismissed under Rule 12(b)(6) because it is governed by the Louisiana Workers' Compensation Act ("LWCA"), which provides the exclusive remedy for workplace injury and prohibits an employee from seeking damages in tort.

### A. Standard of Review

In order to survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. The court must accept as true all of the factual allegations in the complaint in determining whether plaintiff has stated a plausible claim. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2009). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

### B. The Louisiana Workers' Compensation Act

The LWCA provides a remedy to employees injured in the course and scope of employment, enabling employees to obtain benefits without having to prove fault, and

guaranteeing employers immunity from tort claims. Arrant v. Graphic Packaging Intern., Inc., 169 So. 3d 296, 302 (La. 2015). When the LWCA applies, it is a worker's exclusive remedy, and she is prohibited from proceeding in tort. If the worker's injury falls outside the scope of the LWCA, then she may bring a tort claim against her employer.

The LWCA has been amended many times in its history. The original LWCA, enacted in 1914 and amended to add definitions in 1918, applied to "accidents" that occurred on the job. Rando v. Anco Insulations Inc., 16 So. 3d 1065, 1077 (La. 2009). In 1952, the LWCA was amended to apply to a specified list of occupational diseases arising out of employment, including poisoning by oxygen, nitrogen, or carbon compounds, as well as diseases caused by asbestosis. Id. at 1078. In 1975, the LWCA was expanded to cover occupational diseases more generally. Id. at 1078-79. The parties agree that the original LWCA controls, although they disagree on whether it is applicable to Plaintiff's injuries.

Defendant argues that Plaintiff's injury is an accident within the meaning of the LWCA as it applied before 1952. Defendant first points to a line of pre-1952 cases holding that exposure to poisonous fumes qualifies as an accident. Record Document 7-1, p. 5. Defendant argues that ammonia and sodium hydroxide are "acute irritants" that produce immediate injury, and that there is no "body of scientific support for the contraction of 'chemical burns' in the lungs decades after alleged short-term exposure to ammonia or lye." Record Document 16, p. 6. Defendant also points out that "with the advancement of the industrial revolution and growing number and types of diseases

arising from work-related activities," Louisiana courts have given a "liberal interpretation" to "accident" under the LWCA. Rando v. Anco Insulations, Inc., 16 So.3d 1065, 1077 (La. 2009). The Louisiana Supreme Court compiled a list of the sort of injuries and diseases that it had previously held to be accidents under the original LWCA, although it specifically noted that mesothelioma, caused by asbestos exposure, was never classified as an accident under that statute. Id. at 1077 n. 6.

Plaintiff counters that the original LWCA does not apply to her injuries, and she may therefore recover in tort. She was allegedly exposed to the chemicals causing her injuries from 1948 to 1950, which she claims has resulted in chemical burns and difficulty breathing more than 60 years later. Record Document 14, p. 2-3. She asserts for the first time in her opposition to the motion to dismiss that this injury is the sort of long-latency occupational disease, like mesothelioma, not covered by the original LWCA. Record Document 15, p. 6. In support of this argument, Plaintiff relies on cases finding that exposure to asbestos resulting in mesothelioma was not covered by the original LWCA. Id., p. 4-5. Asbestos has been found to have a long latency period, causing mesothelioma many years after a person was exposed. Louisiana courts have held that a person exposed to asbestos before 1952, with injuries presenting many years later, is not covered by the original LWCA and may proceed in tort. Graves v. Riverwood Intern. Corp., 949 So. 2d 576, 588 (La. 2007). Even the Louisiana Supreme Court's liberal interpretation of accident noted that mesothelioma was not covered before 1952. Rando, 16 So. 3d at 1077. Plaintiff analogizes the long delay between exposure and

injury in her case to the slow progression of asbestos exposure into mesothelioma. Record Document 15, p. 6.

The parties' disagreement is fundamentally a question of fact: whether exposure to certain chemicals can cause chemical burns, difficulty breathing, or other injury many decades after the fact. It may be true, as Defendant claims, that exposure to these chemicals only causes acute injury at the time of the exposure, and that there is, medically speaking, no such thing as a long-latency disease associated with this type of exposure. Defendant's poisonous fumes cases are all from before 1952. They show that exposure to poisonous fumes can cause immediate injuries that qualify as accidents, but they do not answer the question whether exposure to poisonous fumes can also cause long-term effects. Plaintiff may be able to prove that exposure to these chemicals caused her injuries more than 60 years later, and therefore that her injuries are more analogous to asbestosis than they are to an accident. Either way, this determination is a question of fact. The Court does not have the sort of medical or scientific record from which to make these determinations, nor are such determinations appropriate at this stage.

Defendant also argues that even if Plaintiff's injuries were caused by exposure to chemicals more than 60 years ago, Plaintiff's case is analogous to a recent case holding that occupational noise-induced hearing loss is an accident covered by the original LWCA. Arrant, 169 So. 3d at 305. In that case, the plaintiffs were exposed to hazardous levels of industrial noise in the course of their employment, resulting in permanent

hearing loss many years after the exposure. Id. at 299. The Louisiana Supreme Court relied on the trial testimony of an expert in audiology showing that noise-induced hearing loss results from years of exposure to excessive noise. Id. at 307. The expert testified that excessive noise causes "immediate injury to the inner ear," although the effect of that damage is only felt over time. Id. The court concluded that excessive noise exposure is a traumatic ear injury, not a long-latency occupational disease, and therefore was within the meaning of "accident" under the LWCA. Id. at 308. This is, again, a factual determination, based on expert testimony. Defendant's analogy turns on its assertion that exposure to poisonous chemicals causes immediate injury. The Louisiana Supreme Court arrived at its conclusion that noise-induced hearing loss caused immediate injury only after the presentation of expert medical evidence. This Court cannot make an analogous factual determination based only on Defendant's assertions about the medical literature.

Plaintiff claims that her exposure to ammonia and sodium hydroxide and other potentially dangerous chemicals at her workplace has caused chemical burns and difficulty breathing. The Court must accept her allegations as true. Plaintiff has stated a claim to relief that is plausible on its face, and Defendant's motion to dismiss must therefore be denied.

C. 12(e) Motion for a More Definite Statement

In the alternative, Defendant moves for a more definite statement of the complaint under Rule 12(e). Record Document 7-1. Defendant seeks a specific list of

the substances to which Plaintiff alleges she was exposed, as well as her specific injuries. Id., p. 8-10. Plaintiff counters that the "Rule 12(b)(5) motion" (which the Court assumes is an error, as there has been no mention of insufficient service of process) must be dismissed because in her amended complaint she added "hydrogen sulfide" as a chemical to which she was exposed, and she alleges, in addition to chemical burns on her lungs, "difficulty breathing and substantially decreased lung capacity." Record Document 15, p. 7.

First, the Court notes that Plaintiff alleges in her second amended complaint that she was exposed to sodium hydroxide, not hydrogen sulfide. Record Document 14, p. 2. Plaintiff does not clarify whether sodium hydroxide and hydrogen sulfide are different names for the same chemical, or two different chemicals, and to which she was exposed. Regardless, Plaintiff's addition is of limited clarifying value, as she still leaves unnamed the "other unreasonably dangerous materials and irritants" to which she may have been exposed, contending that Defendant is better placed to know to what chemicals she might have been exposed. Record Document 15, p. 7. The Court agrees. Many years have passed, and Plaintiff claims no scientific expertise herself that might have allowed her to identify chemicals at the time of exposure. Defendant has employment records, along with any potential records that might exist about the sorts of chemicals it possessed. Defendant is in a better position to determine what chemicals Plaintiff might have been exposed to during her employment, and so a more definite statement of these alleged facts is unwarranted.

Second, while Plaintiff did expand her list of alleged injuries in her second amended complaint, she maintains that they are "including but not limited to" the chemical burns, difficult breathing, and decreased lung capacity. Record Document 15, p. 7. This allegation is too vague to allow Defendant to reasonably prepare a response. Plaintiff must fully specify what injuries she suffers that she believes are the result of her exposure to chemicals while she was employed by Olin. Defendant cannot respond to every possible physical symptom under the sun. If it is to be Defendant's continued contention, as it has been here, that exposure to these chemicals does not cause the kind of injuries of which Plaintiff complains, Defendant can only make this argument with sufficient facts about what injuries are actually alleged. Just as Defendant is better placed to know what chemicals it stored near the traffic department building at its plant in Lake Charles from 1948-1950, Plaintiff is better placed to know from what injuries she suffers. Plaintiff is therefore ordered to file a more definite statement of her injuries, setting out a physical description as well as information about when her various symptoms first occurred.

## III. Conclusion

For the reasons discussed below, Defendant's motion to dismiss [Record Document 7] is **DENIED** and the motion for a more definite statement is **GRANTED IN PART** with respect to Plaintiff's alleged injuries and **DENIED IN PART** with respect to the chemicals to which Plaintiff was allegedly exposed. Plaintiff is **ORDERED** to file a more definite statement of her injuries within 14 days of the date of this order. If

Plaintiff does not timely file a more definite statement, the Clerk of Court is directed to strike Plaintiff's Second Amended Complaint in accordance with Rule 12(e).

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this ____ day of December, 2016.

Elizabeth Erny Foote
United States District Judge